

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 21CR348 |
| | * | |
| BRIAN MCQUADE, | * | (Wire Fraud, 18 U.S.C. § 1343; |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| Defendant | * | 21 U.S.C. § 853(p), 28 U.S.C. § 2461) |
| | * | |

*******

### INDICTMENT

### COUNTS ONE AND TWO
(Wire Fraud)

The Grand Jury for the District of Maryland charges that:

#### Introduction

At all times relevant to this Indictment:

1. Defendant **BRIAN MCQUADE ("MCQUADE")** was a resident of Chevy Chase, Maryland.

2. The Foundation was a Maryland non-profit organization that provided services to combat and wounded military veterans.

3. Accounting Firm A was an accounting firm based in Washington, D.C.

4. Financial Institution 1 was a federally insured financial institution with branches throughout Maryland.

5. Financial Institution 2 was a federally insured financial institution with branches throughout the United States, including in Maryland.

#### The Scheme to Defraud

6. Between in or around June 2018 and continuing until at least in or around August

2021, **MCQUADE** devised and intended to devise a scheme and artifice to defraud the Foundation, and to obtain money and property from the Foundation by means of materially false and fraudulent pretenses, representations, and promises, with the intent to defraud and with knowledge of the scheme's fraudulent nature ("the scheme to defraud").

**Manner and Means of the Scheme to Defraud**

It was part of the scheme to defraud that:

7. From at least in or about June 2018 to at least in or around August 2021, **MCQUADE** held himself out as an investment adviser to clients, including the Foundation.

8. **MCQUADE** made false and fraudulent representations to induce clients, including the Foundation, to send **MCQUADE** funds for the purpose of investing. **MCQUADE** falsely represented that he would open and manage investment accounts on behalf of clients. In reality, **MCQUADE** misappropriated the funds provided by clients, including the Foundation, for personal use.

*The Foundation's Investment with MCQUADE*

9. **MCQUADE** represented to the Foundation and its principals that he was affiliated with Accounting Firm A, which the Foundation hired to assist with accounting work and tax preparation in or around March 2018. **MCQUADE** solicited the Foundation and its principals to engage **MCQUADE** as an investment advisor to manage and invest funds on behalf of the Foundation.

10. In discussions with the Foundation about this investment, **MCQUADE** represented that he worked as an investment adviser through an entity called Columbia Financial Advisors, LLP ("Columbia Financial"). **MCQUADE** further represented that Columbia Financial was affiliated with an established accounting firm, Accounting Firm A.

2

11. Specifically, **MCQUADE** represented to the Foundation and its principals that Columbia Financial was the investment advisory arm of Accounting Firm A. **MCQUADE** met with employees of the Foundation at Accounting Firm A's offices in Washington, D.C.

12. **MCQUADE** told the Foundation that he would place the Foundation's funds in a brokerage account that **MCQUADE** would manage on behalf of the Foundation.

13. On or about April 29, 2019, **MCQUADE** sent a document titled "Investment Advisory Agreement" to the principal of the Foundation, which was on letterhead for Columbia Financial that listed Columbia Financial as "Registered Investment Advisers." The document described Columbia Financial as "an investment advisor registered with the Securities and Exchange Commission under the Investment Advisors Act of 1940" and contained signature lines for both Columbia Financial and the Foundation.

14. On or about May 30, 2019, **MCQUADE** sent an email to the employee of the Foundation, notifying him that **MCQUADE** had completed the brokerage account application to set up the brokerage account for the Foundation.

15. In or around June 2019, **MCQUADE** sent the brokerage application to the Foundation's employee for signature. The employee signed the application and returned it to **MCQUADE** via email on or about June 21, 2019.

16. On or about June 21, 2019, **MCQUADE** caused the Foundation to initiate a wire in the amount of $750,000 from the Foundation's account at Financial Institution 1 to an account in the name of Columbia Financial at Financial Institution 2 ending in x3567 ("Columbia Financial Account x3567") in order for **MCQUADE** to invest and manage the funds on behalf of the Foundation.

17. **MCQUADE** was the authorized user and signatory on Columbia Financial

Account x3567.

## *MCQUADE Misappropriates the Foundation's Funds*

18. Despite promising to open a brokerage account on behalf of the Foundation and providing an application for the brokerage account, **MCQUADE** did not open a brokerage account in the name of or on behalf of the Foundation.

19. Instead, after the Foundation wired $750,000 to Columbia Financial Account x3567, **MCQUADE** misappropriated the funds for personal use and benefit. Specifically, **MCQUADE**:

    a. transferred and caused to be transferred funds from Columbia Financial Account x3567 to his personal accounts, including a personal bank account at Financial Institution 2 ending in x6985 ("**MCQUADE** Personal Account x6985"); and

    b. used and caused to be used funds in both Columbia Financial Account x3567 and **MCQUADE** Personal Account x6985 for personal gain, including spending on restaurants, country club dues, luxury car payments, mortgages, and other personal items.

20. After misappropriating the Foundation's funds, **MCQUADE** continued to make fraudulent misrepresentations to the Foundation about their investment. In or around August 2020, **MCQUADE** provided to the Foundation a fabricated account statement to create the false appearance that the Foundation's funds were held in an investment account for the benefit of the Foundation.

21. In or around December 2020, despite requests from the Foundation, **MCQUADE** failed to return the Foundation's funds in response to the Foundation's request to cash out its

investment.

22. As a result of the scheme, the Foundation suffered losses of approximately $750,000.

## The Charges

23. On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

**BRIAN MCQUADE,**

for the purpose of executing and attempting to execute the scheme to defraud, did knowingly transmit and cause to be transmitted by means of wire communication, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, as set forth below:

| Count | Approximate Date | Description of Interstate Wire |
|---|---|---|
| 1 | May 30, 2019 | Interstate wire transmission caused by email from **MCQUADE**, through servers outside of Maryland, to principal of the Foundation in Maryland. |
| 2 | June 21, 2019 | Interstate wire transmission caused by transfer of $750,000, from the Foundation's account at Financial Institution 1 in Maryland, through servers outside of Maryland, to Columbia Financial Account x3567 at Financial Institution 2. |

18 U.S.C. § 1343

5

# FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), in the event of the defendant's convictions on any of the offenses charged in Counts One through Two of this Indictment.

## Wire Fraud Forfeiture

2. Upon conviction of the offenses set forth in Counts One and Two of this Indictment, the defendant,

**BRIAN MCQUADE,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, constituting or derived from proceeds traceable to the offenses, including, but not limited to, a money judgment of at least $750,000 in U.S. currency equal to the total proceeds obtain by the defendant as the result of his offenses.

## Substitute Assets

3. If, as a result of any act or omission of any defendant, any of the property described above as being subject to forfeiture:

   a. cannot be located upon exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Jonathan Lenzner/CRC*
Jonathan F. Lenzner
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

Date: 2 SEPT 2021